UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

EDWIN KOHR,
      Petitioner

v.             CASE NO. 1:16-CV-0688

COMMONWEALTH OF      (Judge Caldwell)
PENNYSLVANIA, *et al.*,
      Respondents

*M E M O R A N D U M*

I. *Introduction*

      Edwin Kohr, an inmate at SCI-Huntingdon, has filed a pro se petition under 28 U.S.C. § 2254 challenging the decision of the Pennsylvania Board of Probation and Parole to deny him parole. He asserts the decision violates the Ex Post Facto Clause of the federal Constitution.

II. *Background*

      On October 29, 1982, Petitioner was sentenced in the Court of Common Pleas of Lebanon County, Pennsylvania, to 25 to 50 years of imprisonment after being found guilty of the offenses of involuntary deviate sexual intercourse, rape, simple assault, and criminal attempt (rape). (Doc. 8-1, ECF pp. 2-3). The minimum term of his sentence expired on September 14, 2006. (*Id.*, ECF p. 2).

      Petitioner was denied parole on August 2, 2006, June 16, 2009, November 17, 2011, and November 13, 2015. (*Id.*, ECF pp. 6, 9, 12 and 15).

In the November 13, 2015, Notice of Board Decision, the Board gave the following reasons for the denial:

> Your unacceptable compliance with prescribed institutional programs.
>
> Your risk and needs assessment indicating your level of risk to the community.
>
> The negative recommendation made by the Department of Corrections.
>
> Reports, evaluations and assessments/level of risk indicates your risk to the community.
>
> Your failure to demonstrate motivation for success.
>
> Your refusal to accept responsibility for the offense(s) committed.
>
> Your lack of remorse for the offense(s) committed.

(Doc. 8-1, ECF p. 15). The Board added the following:

> You are to serve your unexpired maximum sentence 09/14/2031, or to be reviewed earlier, if recommended by the Department of Correction/County prison staff due to appropriate adjustment and program completion.
>
> At your next interview, the Board will review your file and consider:
>
> Whether you have successfully completed a treatment program for sex offenders.
>
> Your compliance with DOC ordered mental health services.
>
> Whether you have received a favorable recommendation for parole from the Department of Corrections.
>
> Whether you have maintained a clear conduct record.
>
> Whether you have completed the Department of Corrections prescriptive program(s).

(Id., ECF pp. 15-16).[1]

III. *Discussion*

    A. *The exhaustion requirement*

Kohr's challenge to his parole denial is cognizable under 28 U.S.C. § 2254. See *Coady v. Vaughn,* 251 F.3d 480, 484-85 (3d Cir. 2001). Section 2254 requires exhaustion of available state-court remedies before a 2254 petition can be filed in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). A petition for a writ of mandamus is an available state-court remedy for a Pennsylvania inmate who claims that he was denied parole in violation of the Ex Post Facto Clause. See *DeFoy v. McCullough,* 393 F.3d 439, 445 (3d Cir. 2005). Respondents assert that Kohr did not pursue this remedy in the state courts. Hence, his petition must be dismissed for failure to exhaust. Petitioner counters that he did attempt to seek mandamus relief in the Pennsylvania Commonwealth Court but that the court claimed in a letter dated February 2, 2016, not to have a record of his filing. (Doc. 1, ECF pp. 1-2, and attached letter at ECF p. 9).

We need not resolve the exhaustion issue because we have decided that Petitioner's ex post facto claims lack merit. Under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See also Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012)(quoting § 2254(b)(2) in observing that the court could "bypass the exhaustion issue altogether should we decide that the petitioner's habeas claim fails on the merits").

---

[1] We do not deal with the other denials of parole as they are moot in light of the November 13, 2015, decision. *See Holbrook v. Pa. Bd. of Prob. & Parole*, No. 05-CV-529, 2006 WL 398398, at *4 (M.D. Pa. Feb. 16, 2006).

B. *The merits of the ex post facto claims*

In pertinent part, the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1, bars a change in law that retroactively increases the punishment for a crime after its commission. *Garner v. Jones,* 529 U.S. 244, 249-50, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000). The clause covers a change in state regulatory rules, even if the rules deal with an agency's substantive discretion in making the decision to parole. *Id.* at 250, 253, 255, 120 S.Ct. at 1367, 1369-70. The ex post facto issue in this context is one of "particular difficulty," given the paroling agency's discretion. *Id.* at 250, 120 S.Ct. at 1367. Nonetheless, if the change in the law, either on its face, or in its "practical implementation" "creates a significant risk of increasing [the inmate's] punishment" in comparison to the previous rule, *id.* at 255, 120 S.Ct. at 1370, the Ex Post Facto Clause forbids its enforcement against the inmate. *Id.,* 120 S.Ct. at 1370.

"The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change." *Richardson v. Pa. Bd. of Prob. & Parole,* 423 F.3d 282, 287-88 (3d Cir. 2005)(citation omitted). Under the second prong, the retroactive change in the law or policy "must create a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'; a 'speculative and attenuated possibility of . . . increasing the measure of punishment' is not enough." *Richardson,* 423 F.3d at 288 (citations omitted). "It is not sufficient for a prisoner to show that the Board relied on a new law or policy. Rather, he must also adduce some evidence that this new law or policy disadvantaged him by creating 'a significant risk of increasing his punishment.'" *Id. a*t 292 (quoting *Garner,* 529 U.S. at 255, 120 S.Ct. at 1370). On the second prong, "the ultimate

4

question is the effect of the change in parole standards on the individual's risk of increased punishment." *Richardson,* 423 F.3d at 291. The petitioner must "show he was individually disadvantaged" by the change in law or policy. *Id.* at 292.

Petitioner's first ex post facto claim is based on 42 Pa. Cons. Stat. Ann. § 9718.1, which became effective on December 20, 2000. In part, section 9718.1 requires sex offenders to participate in a sexual offender program (SOP) to be eligible for parole. *Id.* § 9718.1(b)(1)(ii).

Petitioner claims that the Board applied section 9718.1 to him and that its application violated the Ex Post Facto Clause for the following reason. He maintains that before section 9718.1's enactment no statute required sex offenders to participate in an SOP to be eligible for parole and no statute or policy required an admission of guilt to be in such a program. Instead, the Board had discretion to require participation in an SOP and a refusal to do so was just one factor to be considered in the parole decision. (Doc. 1, ECF pp. 4-5).

In support of this claim, Petitioner asserts he was already in treatment well before the enactment of section 9718.1, but the Board "still ordered [him] to complete another term of the 'Admitters Group,'" for an additional two years. (*Id.* at ECF p. 5 ¶ 8).[2] Immediately thereafter, he argues that he has demonstrated that the retroactive application of section 9718.1 and the policies implementing it have increased to a significant degree the likelihood or probability that his incarceration has been prolonged. (*Id.*) He then asserts he is entitled to relief on this ex post facto claim. (*Id.*)

---

[2] An admitter is a sexual offender who admits "responsibility for the underlying offense." *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 381 (3d Cir. 2003).

5

We note that Kohr has attached to his petition two certificates. The first one certifies his "successful completion of the Sex Offender Treatment Orientation group" in January 2002. (*Id.*, at ECF p. 11). The second one certified on August 18, 1998, his "successful completion" of the "Level 1 Sex Offenders (STEP) program." (*Id.*, at ECF p. 12).

Elsewhere in his petition he has also stressed his completion of SOPs. Kohr alleges that he is being forced to serve the remainder of his sentence even though he completed the Sex Offender Treatment Orientation group in January 2002 and was refusing to take the program again because it was changed after he completed it. (*Id.*, ECF p. 3 ¶ 1). He also notes that he completed another SOP, "Sex Offenders Treatment Phase One," which he alleges was the only SOP at the time of his participation in it. (*Id.*, ECF p. 3, ¶ 3). He avers he has seen the Board three times and each time it has required him to take an SOP "that was initiated after he . . . completed" an SOP. (*Id.*, ECF p. 3, ¶ 4).

Petitioner's second ex post facto claim is based on the 1996 amendment to 61 Pa. Stat. Ann. § 331.1 (repealed)(now codified at 61 Pa. Cons. Stat. Ann. § 6102). In 1996, the Pennsylvania legislature amended § 331.1, the section of its parole law setting forth the public policy of the commonwealth toward parole. In pertinent part, the amendment changed the statutory section to include the following: "the board shall first and foremost seek to protect the safety of the public." 61 Pa. Stat. Ann. § 331.1 (repealed). Before then, section 331.1 made no mention of public safety and in fact declared the public policy of the state to be that parole would be a period of rehabilitation of an inmate and his restoration to society, aided and facilitated by the parole administration.

Petitioner argues that the Board retroactively applied the 1996 amendment to deny him parole. In support, he argues that he was denied parole and ordered to serve the

remainder of his sentence even though he complied with all of the Board's recommendations, except for completing the admitters group SOP (which he says was no reason to deny parole because he had completed this group in 2002). (Doc. 1, ECF pp. 5-6 ¶ 10). Petitioner adds that the Board ignored his good conduct while in prison, so there is no justification for extending him to his maximum sentence date. (*Id.*).

Respondents argue that both claims fail because Petitioner has not satisfied the second prong of an ex post facto claim, which requires more than a speculative possibility of increased punishment. *See Richardson,* 423 F.3d at 288. Rather, the petitioner must "show he was individually disadvantaged" by the change in law or policy. *Id.* at 292. Here, Respondents argue that Kohr has made only conclusory allegations that he has been disadvantaged. We agree with Respondents and on this ground find the petition meritless.

Additionally, focusing on § 9718.1, we find no ex post facto violation because the first prong of the claim is not satisfied here. It is true that "[p]rior to the enactment of § 9718.1 there was no Pennsylvania statute or regulation that required convicted sex offenders to attend a counseling or therapy program as a condition of parole eligibility." *Newman v. Beard,* 617 F.3d 775, 778 (3d Cir. 2010). But § 9718.1 did not create a retroactive change in policy because the Board "had the ability to, and did, deny parole to some inmates who failed to undergo sexual offender treatment prior to the passage of § 9718.1" *Pleaze v. Klem,* 335 F. App'x 168, 171 (3d Cir. 2009)(nonprecedential).

It is immaterial that Petitioner also claims that before § 9718.1 was enacted no statute or policy required an admission of guilt to be in an SOP.[3] Even in light of this

---

[3] Section 9718.1 does not contain this requirement. Presumably, the Board imposes it as part of the SOP.

7

argument, Petitioner cannot satisfy the second prong by showing a significant risk of increased punishment as "recognition of one's responsibility for past offenses is a 'critical first step' toward rehabilitation" and rehabilitation is a legitimate penological objective. *Newman*, 617 F.3d at 786 (quoted case omitted).

As Respondents argue, the Board was not limited to considering Petitioner's participation, or lack thereof, in an SOP in determining whether he should be paroled. The Board could consider other factors listed in 61 Pa. Cons. Stat. Ann. § 6135. As noted by the court in *Richardson*, they include, among other things, "the prisoner's complete criminal record, conduct while in prison, 'physical, mental, and behavior condition and history,' the 'nature and circumstances of the offense committed,' and 'the general character and background of the prisoner.'" 423 F.3d at 284 (quoting 61 Pa. Stat. Ann. § 331.19) (repealed)(now codified at 61 Pa. Cons. Stat. Ann. § 6135).

Here, in addition to deciding that Petitioner needed to successfully complete an SOP, the Board noted the following factors in denying parole: unacceptable compliance with prescribed institutional programs; a risk and needs assessment indicated Petitioner was a risk to the community; a negative recommendation by the Department of Corrections; a failure to demonstrate motivation for success; refusal to accept responsibility for the offenses committed; and lack of remorse for the offenses committed.

Petitioner likens his situation to *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003), where the petitioner was able to successfully pursue an ex post facto claim against the Board. However, as noted in *Richardson*, *Mickens-Thomas* "may have been an exceptional case." 423 F.3d at 293. In *Richardson*, the Third Circuit summarized its findings in *Mickens-Thomas* that made it exceptional:

8

> (1) We found that the Parole Board relied solely on public safety in denying Thomas parole, while disregarding the Parole Guidelines, the unanimous recommendations of the Department of Corrections, and the evidence of Thomas's rehabilitation; (2) Thomas presented convincing evidence that he had a significant likelihood of parole under the pre–1996 guidelines, but was denied parole under the new policy; and (3) Thomas was able to show that *all* prisoners whose life sentences had been commuted prior to 1996 had been subsequently paroled.

*Id.* (emphasis in original). Petitioner alleges no similar facts.

In passing, Petitioner makes a due process argument that the Board's decision was arbitrary and capricious. (Doc. 1, ECF p. 6. We take this to be a substantive due process claim.

Although a Pennsylvania inmate has no protected liberty interest in parole that implicates procedural due process, substantive due process prohibits denial of parole on constitutionally impermissible grounds. *See Burkett v. Love*, 89 F.3d 135, 139-40 (3d Cir. 1996). For instance, the Board may not arbitrarily deny parole on the basis of race, religion, the exercise of free speech, or on criteria with no rational relationship to the purpose of parole. *Block v. Potter*, 631 F.2d 233, 236-37 (3d Cir. 1980). "When the Parole Board bases its decision on factors that bear no rational relationship to rehabilitation or deterrence, it transgresses the legitimate bounds of its discretion." *Id.* at 637. We have noted above the factors the Board relied on in denying parole. They were not arbitrary or capricious. Petitioner therefore has no substantive due process claim.

IV. *Conclusion*

We will issue an order denying the section 2254 petition. The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his

9

2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Fed. R. App. 22; Local Rule of Appellate Procedure 22.1.

                                                /s/ William W. Caldwell
                                                William W. Caldwell
                                                United States District Judge

Date: November 21, 2017